| | | | |
|---|---|---|---|
| Case No. | **ED CV 18-232-DMG**<br>**ED CV 18-233-DMG**✓<br>**6:15-BK-12078 MJ** | Date | August 21, 2019 |

| | | | |
|---|---|---|---|
| Title | *In Re Orange County Nursery, Inc.* | Page | 1 of 8 |

Present: The Honorable　　DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Appellant(s) | Attorneys Present for Appellee(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE BANKRUPTCY APPEALS**

　　This matter is before the Court on appeal of two orders issued by the Bankruptcy Court on June 8, 2017: (1) Order Allowing Claim of Minority Voting Trust ("Claim Order"), and (2) Order Enforcing Debtor's Fourth Amended Plan of Reorganization (As Modified) ("Plan Order").[1] For the reasons set forth below, the Court **AFFIRMS** both rulings.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

　　Appellant Orange County Nursery, Inc. is a closely-held corporation that has been operated and controlled by the Veyna family since the 1880s. *See In re Orange Cty. Nursery, Inc.*, 439 B.R. 144, 146 (C.D. Cal. 2010) [hereinafter *Orange Cty. Nursery I*]. Appellant's majority shareholders exercise control through a voting trust that owns 50.25% of Appellant's stock ("Majority Voting Trust"). *Id.* On the other hand, Appellee Minority Voting Trust holds only 40.25% of Appellant's stock. *In re Orange Cty. Nursery, Inc.*, 523 B.R. 692, 694 (C.D. Cal. 2014) [hereinafter *Orange Cty. Nursery II*]. In 2006, Appellee sought to sever all ties to Appellant. *See Orange Cty. Nursery I*, 439 B.R. at 146.

　　On August 4, 2006, Appellee filed suit in Orange County Superior Court for Appellant's dissolution. *Id.* On June 29, 2007, Appellant and/or the Majority Voting Trust notified the Superior Court of its/their election under California Corporations Code section 2000 to purchase

---

[1] In Case Number ED CV 18-232-DMG, Appellant Orange County Nursey, Inc. challenges the Claim Order, whereas it challenges the Plan Order in ED CV 18-233-DMG. *See, e.g.*, Appellant's Opening Br. at 5, No. ED CV 18-232-DMG (discussing the scope of the two appeals) [Doc. # 17]. Since Appellant raises the same challenges to the Claim and Plan Orders, the Court resolves both appeals in the instant Order. Further, the citations in this Order refer to documents filed in Case Number ED CV 18-232-DMG.

Appellee's shares in order to avoid Appellant's potential dissolution.[2]  *See id.* at 146–47.  On November 21, 2008, the Superior Court ordered Appellant and/or the Majority Voting Trust to pay Appellee the value of its shares ($4,906,475) plus interest ($343,453) in exchange for Appellee's shares.  *See id.* at 147.  The order provided that if Appellant and/or the Majority Voting Trust failed to pay the full amount due by December 15, 2008, then Appellant would be liquidated and dissolved, and judgment would be entered against Appellant and/or the Majority Voting Trust for all expenses and attorneys' fees incurred by Appellee in connection the election to purchase the shares.  *See id.*  The California Court of Appeal later extended the payment deadline to January 22, 2009 at 4:00 p.m.  *Id.* at 148 (citing *Veyna v. Orange Cty. Nursery, Inc.*, 170 Cal. App. 4th 146, 158 (2009)).

On January 22, 2009, at 1:57 p.m., Appellant filed a petition for corporate reorganization under Chapter 11 of the Bankruptcy Code.  *Id.* at 148.  On May 14, 2009, Appellee filed a proof of claim, asserting its entitlement to $6,008,424.75, consisting of the $5,249,928 awarded by the Superior Court order and $758,496.75 in prepetition fees and costs.  *See id.*  On June 14, 2009, Appellant filed its First Amended Plan of Reorganization, which classified Appellee's claim as an equity interest-related claim that would not receive anything under the plan.  *Id.*  The Bankruptcy Court thereafter confirmed Appellant's plan and found that Appellee had only an equity interest through its shares of stock.  *See id.*  The Bankruptcy Court also allowed Appellee's claim for prepetition fees and costs but limited it to the $150,000 bond posted by Appellant and/or the Majority Voting Trust.  *See id.*

On appeal, this Court concluded that Appellee had "a claim for the value of its shares had [Appellant] been dissolved" and not "merely equity" in Appellant.  *See id.* at 149, 152; *see also Orange Cty. Nursery II*, 523 B.R. at 700–01 ("[Appellee] has a 'claim' for the value of its shares had [Appellant] been dissolved because [Appellant and/or the Majority Voting Trust] failed to purchase [Appellee's] securities. . . . [T]he claim is for the 'actual value' upon dissolution . . . .").  The Court also found that the Bankruptcy Court erred in limiting the fee award to the amount of the bond.  *See Orange Cty. Nursery I*, 439 B.R. at 152–54.  The Court remanded the matter to the Bankruptcy Court to determine the appropriate value of the claim and ascertain the reasonableness of Appellee's fee request.  *See id.* at 152, 54.  In so doing, the Court noted that the Bankruptcy Court had "conflated the issue of subordination with the determination of whether [Appellee's] claim should be allowed at all," and observed that "[t]he subordination inquiry is distinct from the determination whether a claim should be allowed in the first place."  *See id.* at 149 & n.6.

---

[2] This Court previously observed that the record often fails to clarify whether Appellant, the Majority Voting Trust, or both entities engaged in certain conduct.  *See, e.g.*, *Orange Cty. Nursery I*, 439 B.R. at 146 n.1.  Nonetheless, this ambiguity does not affect the resolution of the instant appeals.

On remand, the Bankruptcy Court found that 11 U.S.C. section 510(b) did not require that Appellee's claim be subordinated to the same priority as common stock.[3] *See Orange Cty. Nursery II*, 523 B.R. at 695–96. This Court later reversed that decision, concluding that the Bankruptcy Court should have subordinated Appellee's claim to the level of common stock under Section 510(b) because Appellee's "underlying claim is to recover its equity interest." *See id.* at 699, 704. The Court once again remanded the matter to the Bankruptcy Court. *See id.* at 704.

The Bankruptcy Court thereafter sought briefing from the parties on the method for treating Appellee's interest as a claim (and not merely an equity interest) that is subordinated to the same priority as common stock. *See* Memo. of Decision re Treatment of Minority Voting Trust's Claim & Modifications to Ch. 11 Plan at 109–10 [Doc. # 18-1] [hereinafter Memo. re Treatment].[4] It concluded that the shares in Appellant must be redistributed among the stockholders to account for the value of Appellee's equity interest upon forced dissolution and for the attorneys' fees recoverable under the state court's order. *See id.* at 116–17. Under this methodology, if Appellant's value had declined in value after the petition date, then Appellee's equity interest would increase, and the Majority Voting Trust's and other shareholders' interests would decrease. *See id.* at 111.

The Bankruptcy Court later issued the Claim Order, which provided that the total monetary value of Appellee's claim was $3,326,986. *See* Claim Order at 7 [Doc. # 18-1]. This figure was comprised of $2,419,888, corresponding to the value of Appellee's equity upon dissolution, and $907,098.13 for attorneys' fees and costs incurred in the state action.[5] *See id.* at 5–6. The Claim Order ratably redistributed the shares in Appellant such that Appellee became the owner of 69.73% of Appellant's shares, the Majority Voting Trust owned 25.45% of the shares, and the other shareholders owned 4.82% of the stock. *See id.* at 7–8. The Plan Order modified Appellant's Fourth Amended Plan to reflect the ratable redistribution of stock among all members of Class 7 (*i.e.*, the class of equity interest-related claims and equity interests). *See* Plan Order at 10–11, 19–

---

[3] Title 11 U.S.C. section 510(b) provides:

For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

[4] All page references herein are to page numbers inserted by the CM/ECF system.

[5] It appears that the Bankruptcy Court impliedly subtracted $0.13 from the total monetary value of Appellee's claim. *See* Claim Order at 5–8 [Doc. # 18-1].

UNITED STATES DISTRICT COURT     JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-232-DMG**<br>**ED CV 18-233-DMG**✓<br>**6:15-BK-12078 MJ** | Date | August 21, 2019 |
|---|---|---|---|

| Title | *In Re Orange County Nursery, Inc.* | Page | 4 of 8 |
|---|---|---|---|

21, 23, 28–29 [Doc. # 18-1]. Appellant challenges both the Claim Order and the Plan Order. *See* Appellant's Opening Br. at 5 [Doc. # 17].

## II.
## STANDARD OF REVIEW

"The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*." *Garlock v. Thomas*, 575 B.R. 913, 918 (N.D. Cal. 2017). Under the clear error standard, the bankruptcy court's factual findings cannot be disturbed unless "the court is left with the definite and firm conviction that a mistake has been committed by the bankruptcy judge." *See In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009). The appellant bears the "burden of persuading [the district court] that the [bankruptcy] court applied an incorrect standard of law, a clearly erroneous view of the facts, or otherwise did something that leaves [the district court] with the definite and firm conviction that there was a clear error of judgment . . . ." *See In re Khaligh*, 338 B.R. 817, 832 (B.A.P. 9th Cir. 2006).

## III.
## DISCUSSION

Appellant raises three principal challenges to the Bankruptcy Court's Claim and Plan Orders: (1) the Bankruptcy Court's decision to ratably redistribute Appellant's shares among its stockholders violated 11 U.S.C. section 510(b); (2) Federal Rule of Bankruptcy Procedure 3019(a) required the Bankruptcy Court to permit the members of Class 7 to vote on the modification to the Fourth Amended Plan of Reorganization before its confirmation; and (3) the Bankruptcy Court's decision to confirm a plan allowing Appellee to become the majority shareholder is inconsistent with *In re American Solar King Corp.*, 90 B.R. 808 (W.D. Tex. 1988), and *In re Kaiser Group International, Inc.*, 326 B.R. 265 (D. Del. 2005). *See* Appellant's Opening Br. at 13–24 [Doc. # 17]. Appellant does not otherwise assert that the Bankruptcy Court lacked the authority to ratably redistribute the shares or specifically challenge the Bankruptcy Court's formula for doing so.[6] For the reasons discussed in this Part, Appellant's arguments are without merit.

---

[6] Appellant contends that the Bankruptcy Court erroneously relied upon *In re Superior Offshore International, Inc.*, 591 F.3d 350 (5th Cir. 2009), for the proposition that it could redistribute Appellant's shares. *See* Appellant's Opening Br. at 18 [Doc. # 17]. Yet, Appellant impliedly concedes that a bankruptcy court may alter the proportional ownership interests of shareholders in accordance with the principles announced in *Solar King* and *Kaiser*. *See id.* at 18–24 ("*Kaiser* and *Solar King* indicate that issuance of new shares requires proper notice, and potential resolicitation of a plan, and is to be done only if issuance of shares does not disrupt the majority-minority ownership of the debtor."). Because the Court finds that the Claim and Plan Orders are consistent with *Solar King* and *Kaiser*, it need not address whether *Superior Offshore* also supported the Bankruptcy Court's rulings.

UNITED STATES DISTRICT COURT  JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **ED CV 18-232-DMG**<br>**ED CV 18-233-DMG**✓<br>**6:15-BK-12078 MJ** | Date | August 21, 2019 |
|---|---|---|---|

| Title | *In Re Orange County Nursery, Inc.* | Page | 5 of 8 |
|---|---|---|---|

As the text of 11 U.S.C. section 510(b) indicates, that provision concerns only the *priority* of a particular security-related claim (*e.g.*, at the level of holders of common stock, rather than in a class of unsecured creditors), and not the *value* of that claim.[7] *See supra* note 3; *see also Kaiser*, 326 B.R. at 268 ("[Section 510(b)] does not operate to reduce or eliminate [the] claim, but only to ensure that [the claimants] receive compensation for their claim on the same basis as the claimants who are on the level to which their claim is subordinated."). The decisions that Appellant cites for the contrary proposition merely hold that a subordinated claimant will receive nothing if the class to which it belongs likewise receives no distribution from the estate. *See In re Am. Hous. Found.*, 785 F.3d 143, 158 (5th Cir. 2015) ("[T]he practical effect of subordinating Templeton's claim to Class 18 is that Templeton will receive nothing . . . ."); *In re Geneva Steel Co.*, 281 F.3d 1173, 1177 (10th Cir. 2002) ("This adverse treatment [stemming from Section 510(b)] carries serious implications for investors, because a Chapter 11 reorganization plan, as is the case here, may deny distributions to entire classes of inferior security interests."); *In re WorldCom, Inc.*, 329 B.R. 10, 12 (S.D.N.Y. 2005) (observing that the parties disputed whether a claim should be subordinated to the level of common stock, a class that would receive nothing under the plan); *In re Walnut Equip. Leasing Co., Inc.*, No. 97-19699-DWS, 1999 WL 1271762, at *1 (E.D. Pa. Dec. 28, 1999) (subordinating a claim under Section 510(b) to a class that was not entitled to any distribution).[8] Further, Appellant's position is foreclosed by this Court's prior ruling that Appellee "has a claim for the value of its shares had [Appellant] been dissolved." *See Orange Cty. Nursery I*, 439 B.R. at 152. This is because if the Bankruptcy Court does not redistribute Appellant's shares, then the Fourth Amended Plan of Reorganization would not account for the fact that the value of Appellee's claim is greater than that of its equity interest in Appellant. *See* Claim Order at 7–8 (concluding

---

[7] Appellant further argues in passing that an order requiring the redistribution of its shares violates 11 U.S.C. section 1123(a)(4), which provides in pertinent part that "a plan shall . . . provide the same treatment for each claim or interest of a particular class . . . ." *See* 11 U.S.C. § 1123(a)(4); Appellant's Opening Br. at 13 [Doc. # 17]. Much like Section 510(b), Section 1123(a)(4) does not address the valuation of the claims and interests within a specific class. As Appellant does not cite any authority to the contrary, the Claim and Plan Orders may not be reversed on this basis.

[8] Appellant also cites *In re USA Commercial Mortgage Co.*, 377 B.R. 608 (9th Cir. B.A.P. 2007), for the proposition that if an equity holder's claim is subordinated under Section 510(b), then that person will receive "no additional distribution" in connection with the claim. *See* Appellant's Opening Br. at 16 [Doc. # 17]. Nevertheless, *USA Commercial Mortgage* held only that a particular security-related claim might not receive a distribution if it is subordinated below a class of equity interests. *See USA Commercial*, 377 B.R. at 620 ("§ 510(b) would subordinate Appellant's claims to a level below the . . . membership interests [in the debtor-LLC]. . . . [T]he effect of subordination may be functionally equivalent to disallowance (*i.e.*, no distribution on the claims)."). In contrast, Appellee's claim is entitled to the same priority as holders of common stock because it arises out of Appellee's ownership thereof. *See Orange Cty. Nursery II*, 523 B.R. at 703–04; *USA Commercial*, 377 B.R. at 618–19 ("In 1984, § 510(b) was amended to provide that if the applicable security is common stock, then the claims under § 510(b) have the same priority as common stock.").

that the total monetary value of Appellee's claim is $3,326,986, and that the residual value of all shares in Appellant is only $2,416,718) [Doc. # 18-1].[9]

Appellant's reliance on Federal Rule of Bankruptcy Procedure 3019(a) fares no better. That Rule provides:

> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

By its terms, Rule 3019(a) applies only if the proponent of a plan attempts to modify it without first allowing creditors and equity security holders to vote on the modification. *See also Solar King*, 90 B.R. at 822–26 (applying Rule 3019(a) to a modification advanced by the proponent of the original plan). Here, *the Bankruptcy Court*—not the *plan's proponent*—sought to modify the plan in order to adhere to this Court's prior rulings that Appellee holds a claim that is subordinated to the level of common stock.[10] *See* Memo. re Treatment at 109–10, 114–15 ("In accordance with two District Court Appellate Orders, this court recognized that it must treat the Valuation Clam as a claim, not an interest, but that the claim must be subordinated to the same priority as common stock. Therefore, the court invited briefing by the parties on the remaining issues in this chapter 11 case, including how the subordinated claim should be treated in the plan and what modifications, if any, needed to be made to the plan to accomplish that treatment." (footnote omitted)) [Doc. # 18-1]. Therefore, Rule 3019(a) is wholly inapplicable.

More importantly, this Court explicitly directed the Bankruptcy Court to vacate or modify all prior orders providing that Appellee merely held an equity interest, and remanded the matter for proceedings consistent with the Court's determination that Appellee has a claim for the value

---

[9] Although Appellant's briefing is not entirely clear on this point, it seems to concede that Appellee is entitled to at least the value of its equity interest as of the date on which Appellant filed its Chapter 11 petition. *See* Appellant's Opening Br. at 24 ("The Equity Claim [belonging to Appellee] is no more nor less than [Appellee's] equity interest in [Appellant] as of the Petition Date. It is a mirror.") [Doc. # 17]. Yet, Appellant apparently fails to recognize that the value of its equity has since diminished or that Appellee also has a right to certain prepetition attorneys' fees and costs. *See id.*

[10] Appellant was the proponent of the Fourth Amended Plan of Reorganization. *See* Debtor's Fourth Am. Plan of Reorg. at 57–86 [Doc. # 18-3].

of its shares upon dissolution. *See Orange Cty. I*, 439 B.R. at 152, 154; *see also* Memo. re Treatment at 114 ("[Appellant] submitted that the court has no power to modify the plan, since such modification must come from a plan proponent. [¶] This court's task is to treat the Valuation Claim in a manner that is consistent with the two District Court rulings which presently provide the law of the case.") [Doc. # 18-1]. Confirming a plan that did not account for the value of Appellee's claim would have violated the rule of mandate. *See In re de Jong*, 588 B.R. 879, 899 (9th Cir. B.A.P. 2018) ("Under the 'rule of mandate,' the trial court must adhere to the appellate court's decision . . . ."). Appellant does not cite any authority establishing that the Bankruptcy Court was free to disregard this Court's instructions, nor does it demonstrate that those instructions were erroneous. It follows that the Bankruptcy Court was authorized (indeed compelled) to modify the plan to comply with this Court's binding appellate rulings, regardless of whether Appellant's creditors or stockholders consented to any such modification.[11]

Appellant further argues that *Solar King* and *Kaiser* barred the Bankruptcy Court from redistributing the shares in a manner that "disrupt[ed] the majority-minority ownership of the debtor." *See* Appellant's Opening Br. at 20–24 [Doc. # 17]. Neither decision purports to recognize such a limitation on the Bankruptcy Court's authority to ratably redistribute shares. Although *Solar King* confirmed a modification to a plan that resulted in a less than 1% dilution of the stockholders' ownership interests, that decision does not hold that a bankruptcy court lacks the authority to grant relief that has a greater impact on such interests. *See Solar King*, 90 B.R. at 822–26 & n.31. Rather, it held only that the equity holders were "deemed" to have accepted the modification under Rule 3019(a) because it resulted in a "miniscule dilution of the stock issue." *See id.* at 825–26.

Moreover, Appellant insists that the Claim and Plan Orders run afoul of *Kaiser* because they "'unravel[]' the [p]lan" and will prejudice Appellant's other shareholders who supposedly "could not have anticipated at the time they voted on the [p]lan and it was confirmed, February 25, 2010, that their equity interests could be diluted such that [Appellee] could become the majority interest holder[] . . . ." *See* Appellant's Opening Br. at 22 (quoting *Kaiser*, 326 B.R. at 270) [Doc. # 17]. Nonetheless, like the bankruptcy court order upheld in *Kaiser*, the Claim and Plan Orders in the instant case do not impair the interests of higher priority classes but simply dilute the relative ownership interests of other equity holders to account for the value of Appellee's claim. *See Kaiser*, 326 B.R. at 266–270 & n.3. Further, the Bankruptcy Court eloquently disposed of Appellant's assertion of prejudice to other shareholders:

---

[11] Additionally, Appellant had the opportunity to protect the interests of its shareholders because the Bankruptcy Court requested briefing from the parties before it modified the plan. *See* Memo. re Treatment at 109–10 [Doc. # 18-1]. Yet, Appellant chose not to propose an alternative modification that accounted for the value of Appellee's claim. *See id.* at 114 ("[Appellant] asserted that . . . the plan needs no modification because the plan properly provides for Class 7.").

> On more than one occasion the Majority, in the guise of the debtor, has argued that such ratable redistribution of the shares would be unfair to the shareholders not represented by either the Majority or [Appellee]. The court has a difficult time understanding why that is [Appellee's] fault. The Majority has been in control of this chapter 11 proceeding from the day [Appellant] filed to the present date, averting the direct consequences of the state court order but creating the costly proceedings and valuation outcome now before the court. If the Majority wanted to protect the voiceless shareholders, it could have taken some steps to do so and perhaps have conducted this litigation differently. At a minimum, it would not have diminished the residual value of [Appellant] by bleeding the Majority's attorney's fees from its coffers, as the court understands it has done. The Majority, not [Appellee] has a fiduciary duty to other shareholders which may have been breached.

*See* Memo. re Treatment at 116–17 n.12 [Doc. # 18-1].

In sum, the Court concludes that Appellant has failed to discharge its burden of showing that the Bankruptcy Court erred. *See In re Khaligh*, 338 B.R. at 832.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's Order Allowing Claim of Minority Voting Trust, and its Order Enforcing Debtor's Fourth Amended Plan of Reorganization (As Modified).

**IT IS SO ORDERED.**


cc: Bankruptcy Court